# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CONRAD BROWN, A/K/A COON<br><br>Defendant. | 1:22-CR-10024-CBK<br><br>MEMORANDUM OPINION AND ORDER ON GOVERNMENT'S REQUEST FOR NO CONTACT CONDITION IN DETENTION ORDER |

In this child sexual abuse case, Conrad Brown a/k/a Coon (Brown), objects to the Government's request to include a special condition to his detention order that prohibits him from having contact with Child Victims 1-3[1] and Norelle Brown (Norelle), a percipient witness in the case. Exercising its inherent authority[2] to protect the administration of justice, the Court grants the request.

---

[1] Docket No. 1-2 (sealed) (identifying the children and their birthdates).

[2] *See* Jeffrey C. Robbins, *The Inherent and Supervisory Power*, 54 Ga. L. Rev. 412, 422 (2020) ("[T]he power possessed by a court simply because it is a court; it is [ ] authority that inheres in the very nature of a judicial body and requires no grant of power other than that which creates the court and gives it jurisdiction. This power is often described as 'supervisory power' over the parties and actors within the jurisdiction of a particular court"); s*ee also* U.S. Const. art. 1, § 8, cl. 18 (necessary and proper clause — from which inherent authority is based).

1

## BACKGROUND

A federal grand jury indicted Brown on six counts of aggravated sexual abuse of a child[3] and one count of abusive sexual contact.[4] The charges involve Child Victims 1-3, who are all under the age of 12.[5] Brown was in BIA custody at the time of his indictment,[6] serving a tribal sentence for domestic violence against his wife, Norelle.[7] After his transfer to federal custody, Brown appeared in court, waived his detention hearing, and the Court ordered him detained.[8]

The day after Brown's waiver, the Government requested that a no-contact condition be added to his detention order.[9] In support of its request, the Government proffered the following:

1. While incarcerated, Brown has tried to call Norelle, connecting with her on occasion;

2. Brown's brother has likewise contacted Norelle and spoken to her about the allegations in the indictment;

---

[3] 18 U.S.C. §§ 1153, 2241(c), and 2246(2).

[4] 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3).

[5] Docket Nos. 1-1, 1-2 (sealed).

[6] Docket No. 4; see also Docket No. 8 at 7 (access restricted).

[7] Bail Review Hr'g Tr. 2-4 (Aug. 5, 2022).

[8] Docket Nos. 11, 17.

[9] Bail Review Hr'g Tr. 2-5; Docket No. 18.

3. Norelle is terrified of Brown and does not want to communicate with him;

4. She has custody of two of the alleged Child Victims.

5. There is a familial relationship between Brown and Child Victims 1-3 (one is a stepdaughter and the other two are nieces); and

6. Child Victims 1-3 do not want to have any contact with Brown.[10]

The Government claimed, during a hearing held on its request, that the Court could impose a no-contact condition under the Crime Victims' Rights Act (CVRA).[11] Brown opposed the request, arguing that the Government could not assert the rights of Norelle and Crime Victims 1-3 under the CVRA and that including such a condition in the detention order would violate his constitutional rights.[12]

## DISCUSSION

### A. Statutory Authority

Courts have generally rejected arguments that no-contact conditions of detention may be ordered under the Bail Reform Act (BRA). [13] The text of the BRA only permits a court to require, as a condition of release, that a defendant not have contact with an

---

[10] Bail Review Hr'g Tr. 4-6.

[11] *Id*. at 3-4, 15-16; *see* 18 U.S.C. § 3771 (Crime Victims' "bill of rights").

[12] Bail Review Hr'g Tr. 8-14.

[13] *See United States v. Paquin*, CR-21-568-MV, 2021 WL 4319663, at * 2 (D. N.M. (Sept. 23, 2021); *United States v. Sims*, 21-cr-00026-GMN-BNW, 2021 WL 1062548, at * 4 (D. Nev. Mar. 18, 2021).

alleged crime victim and a potential witness.[14] The BRA, however, does not speak to whether a court may include a like condition—or, for that matter, any conditions at all—as part of pretrial detention.[15] For this reason, courts have found that the BRA does not provide a statutory "hook" for the prescription of a no-contact condition to a pretrial detainee.[16]

The same is true of the CVRA. None of the CVRA's provisions, or its implementing rule,[17] explicitly vest a court with the power to impose a no-contact condition that may encroach on a defendant's First Amendment rights.[18] Without any supporting authority, the Court cannot rely on the CVRA as an empowering source to condition Brown's detention in the manner the Government requests.[19]

Now, there is authority for a court to enter a no-contact order under 18 U.S.C. § 1514. That statute allows the court to "issue a temporary restraining order prohibiting

---

[14] 18 U.S.C. § 3142(c)(1)(v).

[15] *See United States v. Potter*, 3-20-mj-00061, 2020 WL 6081894, at *4 (D.V.I. Oct. 15, 2020).

[16] *See Paquin*, 2021 WL 4319663, at * 2 (collecting cases).

[17] *See* Fed. R. Crim. P. 60 (Victim's Rights).

[18] *Paquin*, 2021 WL 4319663, at * 2.

[19] *See Sims*, 2021 WL 1062548, at * 3 (without further authority and arguments, court unable to hold that 18 U.S.C. § 3771(a)(1) and (c)(1) authorized imposing no-contact orders).

4

harassment of a victim or witness in a Federal criminal case."[20] But the statute is not in play with Brown because the Government failed to make the required factual showing "by affidavit or [ ] verified complaint" for a harassment restraining order.[21]

### B. Inherent Authority

Federal courts have the "inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."[22] It "has long been understood that 'certain implied powers must necessarily result to our [c]ourts of justice from the nature of the institution,' powers 'which cannot be dispensed with in a [c]ourt, because they are necessary to the exercise of all others.'"[23] These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[24]

For example, courts possess the inherent authority to require "submission to their lawful mandate";[25] "fashion an appropriate sanction for conduct which abuses the

---

[20] 18 U.S.C. § 1514(a).

[21] *Id.*

[22] *Degen v. United States*, 517 U.S. 820, 823 (1996).

[23] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812)).

[24] *Link v. Wabash R. R. Co.*, 370 U.S. 626, 630-31 (1962).

[25] *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821).

judicial process";[26] address "a full range of litigation abuses";[27] and "manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."[28] Courts may also issue a protective order under the inherent "equitable powers" they have "over their own process, to prevent abuses, oppression, and injustices."[29]

Even so, "[b]ecause of [its] very potency, inherent [authority] must be exercised with restraint and discretion."[30] It should be invoked "only when and to the extent justified by danger which the defendant's conduct presents or by danger of significant interference with the progress or order of the trial."[31] Although the Supreme Court has never precisely delineated the outer boundaries of a [ ] court's "inherent powers," it has recognized two limitations of those powers: (1) the use of them cannot be "contrary to any express grant of or limitation on the [ ] court's power contained in a rule or statute"

---

[26] *Chambers*, 501 U.S. at 44-45.

[27] *Id.* at 46.

[28] *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

[29] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984).

[30] *Chambers*, 501 U.S. at 44.

[31] *Bitter v. United States*, 389 U.S. 15, 16 (1967).

and (2) their use must be a "reasonable response to the problems and needs' confronting the court's fair administration of justice."[32]

Federal and state courts have sanctioned the use of a court's inherent authority to impose no-contact conditions on detained criminal defendants.[33] But no court in the Eighth Circuit, including the appeals court itself, has passed on the issue, in the pretrial detention context or one analogous to it.

There is no clear or present danger to Norelle and Child Victims 1-3. Brown is detained and thus cannot have contact with them.[34] But he has repeatedly tried to

---

[32] *Dietz* 579 U.S. at 45.

See, *e.g.*, *United States v. Morris*, 259 F.3d 894, 900-01 (7th Cir. 2001) (court's inherent authority may be invoked when defendant's conduct presents significant interference with the administration of justice, particularly when the victim is a child and vulnerable); *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981) (court can issue a no-contact order to protect witnesses); *Sims*, 2021 WL 1062548, at ** 4-6 (court has inherent authority to impose case-tailored detention condition to protect minor victims of sex trafficking who defendant attempted to contact while detained); *Potter*, 2020 WL 6081894, at ** 1, 3-4, 7 & n. 16 (court may issue no-contact order against defendant, who contacted victims, under court's inherent authority to protect victims and witnesses); *Hicks v. State*, 377 P. 3d 976, 980 (Alaska Ct. App. 2016) (courts have the inherent authority to impose no-contact orders on defendants who remain in pretrial detention); *State v. Ayoub*, 218-2017-CR-1636, 2018 WL 324996, at * 5 (N.H. Super. Jan. 5, 2018) (court has the inherent authority to issue no-contact order "to protect the integrity of the fact-finding process"); *see also United States v. Diaz,* 3:16-85, 2021 WL 5999196, at ** 2-3 (M.D. Pa. Dec. 20, 2021) (no clear error in the imposition of a no-contact order as the order fell within scope of court's inherent authority to prevent "abuses, oppression, and injustice" in the administration of justice); *Paquin*, 2021 WL 4319663, at ** 4-5 (recognizing that courts have inherent authority to protect victims and witnesses but removing no-contact condition from defendant's detention order because evidence insufficient and condition too broad).

[34] *See Sims*, 2021 WL 1062548, at * 5.

7

contact Norelle—reaching her at times—and she is extremely fearful of him. He should not be permitted to manipulate her, and any of the Child Victims, from inside a jail and affect their willingness to cooperate with the prosecution and testify. Doing so, would undermine the administration of justice and fundamental notions of fair play.[35]

### C. Constitutional Implications

Brown's due process and equal protection objections fail because they are vague, lack supporting authority, and have no merit. And a no-contact condition can be narrowly drawn that does not unreasonably infringe on Brown's First Amendment rights and protects the administration of justice: He will have no contact, direct or indirect and by any means of communication, with Child Victims 1-3 and Norelle about this case.[36] That includes responding to any of them if they contact him on matters related to the case.

## CONCLUSION

Courts have the inherent authority to protect child victims and witnesses, particularly in sex cases, so long as the conditions of detention do not stretch beyond that authority. A condition banning Brown from communicating with Child Victims 1-3 and

---

[35] *See Morris*, 259 F.3d at 901; *Ayoub*, 2018 WL 324996, at * 5.

[36] *See Sims*, 2021 WL 1062548, at * 6; *see also Paquin*, 2021 WL 4319663, at * 4 (the magistrate judge could have narrowly addressed any danger defendant posed to the administration of justice by ordering that he "not communicate with his son *about the case*").

Norelle about the case is within the scope of the Court's authority, can be tightly crafted to assuage any First Amendment concerns, and warranted under the circumstances.

Accordingly, it is

ORDERED that the Government's request to include a no-contact condition in Brown's detention order is GRANTED but only to the extent stated in this opinion.

DATED this 12th day of August, 2022 at Pierre, South Dakota.

                              **BY THE COURT:**

                              *[signature]*

                              **MARK A. MORENO**
                              **UNITED STATES MAGISTRATE JUDGE**